**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| YAZMIN JUAREZ COYOY, on her own ) Behalf and as Surviving Parent of ) Mariee Camyl Newberry Juarez, ) )     Plaintiff, ) ) V. ) ) CORECIVIC, INC., ) )     Defendant. ) | CIVIL ACTION NO. SA-19-CA-00916-FB |

**ORDER REGARDING DEFENDANT'S MOTION TO DISMISS**

Before the court are Defendant CoreCivic's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and alternative motion to strike certain allegations in the complaint pursuant to Rule 12(f) (docket no. 14), plaintiff's response (docket no. 17) in opposition thereto and defendant's reply (docket no. 18) to plaintiff's response. After careful consideration, the Court is of the opinion the motion should be granted in part and denied in part.

BACKGROUND

Plaintiff Yazmin Juarez Coyoy, the mother of a toddler who died shortly after the pair were held at a detention center in Dilley, Texas, filed this negligence suit against CoreCivic, Inc. ("CoreCivic"), the private jail company which operates the facility. Mariee Camyl Newberry Juarez died at twenty-one months from a viral lung infection weeks after she and her mother were released from the South Texas Family Residential Center in 2018. The 2,400-bed facility, which holds families and children, is operated by CoreCivic pursuant to an agreement with U.S. Immigration and Customs Enforcement ("ICE"). Under the terms of the agreement, CoreCivic was responsible for managing and overseeing the day-to- day operations at the detention center. Relevant to this case, CoreCivic was

specifically responsible for providing residents with safe, sanitary living conditions and access to medical facilities, equipment and supplies. ICE was responsible for providing detainees at the facility with medical care.

According the complaint, plaintiff left Guatemala with her then-nineteen-month-old daughter to seek asylum in the United States. The pair illegally entered the United States in March of 2018, and were apprehended by immigration officials. Plaintiff and her daughter were taken into custody and temporarily detained at a U.S. Customs and Border Patrol immigration processing center, and transferred to the South Texas Family Detention Center in Dilley, Texas, four days later.

Mariee was healthy when she and her mother crossed the Rio Grande in March but developed a respiratory infection after sharing a room at the detention center with other mothers and children, some of whom were sick, including a sluggish boy with a cough and runny nose. Mariee's fever spiked to 104 degrees, and she vomited, suffered diarrhea and lost weight. Plaintiff brought her daughter to the center's health clinic multiple times, but there were long waits, and they were twice turned away. The clinic prescribed what plaintiff describes as ineffectual medications and a camphor balm not advised for a girl Mariee's age because it could worsen her breathing. On March 23, 2018, a nurse said she would refer Mariee to a physician, but two days later a licensed vocational nurse who never examined Mariee cleared her for release.

After flying to New Jersey to join relatives, Mariee was seen by a pediatrician. She was admitted to the emergency room needing oxygen that night. Over the next six weeks, Mariee spent time in two hospitals. Mariee died May 10, 2018, after "a catastrophic intrathoracic hemorrhage" led to brain and organ damage. The cause of death was bronchiectasis, pulmonitis and pnuemothorax, or collapsed lung. The complaint states that, in her last days, Mariee suffered extreme physical and emotional pain

and "because she was sedated and on paralytic drugs, along with all of the IV lines, she could not hug her mother or be held."

Plaintiff filed suit against CoreCivic on behalf of herself and her daughter alleging negligence and gross negligence causes of action under the Texas Wrongful Death Act and the Texas Survival Statute.  Defendant moves to dismiss plaintiff's complaint under Rule 12(b)(6) and alternatively to strike portions of plaintiff's complaint under Rule 12(f).  Plaintiff filed a response in opposition to the motion, to which CoreCivic filed a reply.

DISCUSSION

CoreCivic's Rule 12(f) Motion to Strike

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a district court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." For the reasons stated in the motion and reply, the Court finds CoreCivic has met its heavy burden to show the challenged allegations are not "directly relevant to the controversy at issue" and are not "minimally supported" by the allegations set forth in the complaint.  *United States v. Coney,* 689 F.3d 365, 379 (5th Cir.2012) (explaining that allegations are subject to being stricken only where they possess "no relation to the controversy").  Accordingly, CoreCivic's alternative motion to strike certain allegations in the complaint pursuant to Rule 12(f) is granted.

CoreCivic's Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Although a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level" in order to avoid dismissal.  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The Supreme Court expounded on the *Twombly* standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2009).

1.  Plaintiff's Allegations and Negligence Standards of Review

Plaintiff alleges CoreCivic was negligent and grossly negligent because it detained Mariee in unsanitary, unsafe conditions and failed to ensure she had access to adequate medical care. CoreCivic moves to dismiss under Rule 12(b)(6) arguing that it owed no duty to provide Mariee with access to adequate medical care. CoreCivic also argues plaintiff's complaint alleges, at most, that mother and daughter were assigned to a "cramped" and "crowded" housing unit, which does not sufficiently state a claim that it breached its duty to provide safe, sanitary conditions or that Mariee's death was proximately caused by any such breach. Under Texas Law, to state a claim for negligence or gross negligence, a plaintiff must allege the existence of a duty, a breach of that duty, and damages proximately caused by the breach. *Western Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005). An act or omission is grossly negligent if:

> (1) viewed objectively from the actor's standpoint, the act or omission . . . involves an extreme degree of risk, considering the probability and magnitude of the potential harm

to others, and (2) the actor . . . has actual, subjective awareness of the risk involved, but nevertheless proceeds in conscious indifference to the rights, safety, or welfare of others.

*Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex. 1998).

2.  CoreCivic had no Duty to Ensure ICE Provided Mariee With Adequate Medical Care

As noted, CoreCivic first asserts plaintiff failed to state a claim for negligence or gross negligence because CoreCivic had no legal duty ensure that Mariee had access to adequate medical care. The existence of a duty is a question of law for the Court to decide from the facts surrounding the occurrence in question.  *Doe v. MySpace, Inc.,* 474 F. Supp. 2d 843, 850 (W.D. Tex. 2007), *aff'd,* 528 F.3d 413 (5th Cir. 2008).  Plaintiff admits ICE was responsible for providing medical care, but asserts that CoreCivic nonetheless had an overarching duty "to ensure access to adequate medical care," and breached that duty when it did not "ensure that Mariee received adequate medical care." Plaintiff argues this duty derives from the Restatement (Second) of Torts § 324A, which imposes liability on one who "undertakes . . . to render services to another which [it] should recognize as necessary for the protection of a third person" but fails to exercise reasonable care in that undertaking.

Section 324A, however, "imposes a duty to perform without negligence only the task that the actor has undertaken to accomplish."  *Kuentz v. Cole Sys. Grp., Inc.,* 541 S.W.3d 208, 214 (Tex. App.–Houston [1st Dist.] 2017, no pet.).  "[I]t does not expand the scope of the undertaking."  *Lowe's Home Ctrs., Inc. v. GSW Mktg., Inc.,* 293 S.W.3d 283, 291 (Tex. App.–Houston [14th Dist.] 2009, pet. denied).  CoreCivic's undertaking is set forth in the Modified Inter-Government Service Agreement ("Modified IGSA"), and particularly the Performance Work Statement.  (Docket no. 14-5, Exhibit 5). Nothing in those contractual documents required, or otherwise reflect an undertaking by, CoreCivic to

ensure that Mariee received adequate medical care.  Rather ICE retained and was responsible for the provision of medical care and to ensure that it did so adequately.[1]

Plaintiff responds that her suit is not for breach of contract, but grounded in tort, and therefore the Modified IGSA cannot expunge CoreCivic's duty under § 324A.  Although any duty under § 324A arises out of tort law, *EnGlobal U.S., Inc. v. Gatlin,* 449 S.W.3d 269, 282 (Tex. App.–Beaumont 2014, no pet.), when the undertaking is by contract the scope of the duty is defined by the contract.  *See Knife River Corp.-S. v. Hinojosa,* 438 S.W.3d 625, 633-36 (Tex. App.–Houston [1st Dist.] 2014, pet. denied); *Lowe's Home Ctrs.,* 293 S.W.3d at 292-94.  Accordingly, the Modified IGSA defines the scope of CoreCivic's undertaking and therefore any duty it owed to plaintiff or her daughter.

Plaintiff points to § 4(b)(iii) of the Performance Work Statement.  Under this provision, CoreCivic undertook only an obligation to "*provide* residents *access* to medical *services* in the medical facility 24 hours per day, 7 days per week."  (Docket no. 14-1, § 4(b)(iii)) (emphasis added).  It did not, as plaintiff asserts, undertake "to *ensure* access to *adequate* medical *care*" (docket no. 17 at pages 5, 9) or "to *ensure* Mariee *received adequate* medical *care.*"  *Id.* at 9 (emphasis added); *see also id.* at 6 ("CoreCivic failed to *ensure* that they *received proper* medical *attention.*") (emphasis added).

Accordingly, the extent of CoreCivic's undertaking was to provide access to medical services. In this regard, plaintiff does not allege that CoreCivic failed to provide such access to medical services

---

[1] *Compare* (Docket no. 14-1, Ex. 5, § 3(g)) ("ICE Health Service Corps (IHSC): Serves as ICE Medical Authority for detainee health care issues), *with* (Docket no. 14-1, Ex. 5, § 4 (b)(iii) (explaining that ICE will "use its own Medical Providers," while CoreCivic "will provide a medical and dental facility adequately sized to the population of the Center"; "all medical, dental, and mental health equipment and supplies" and "will maintain medical facilities and all medical equipment in good working condition and ensure adequate stocks of medical supplies are maintained"; and "will provide residents access to medical services in the medical facility 24 hours per day, 7 days per week, and will provide security staffing for the medical facility."); *see also* (Docket no. 14-1, Ex. 5, Appendix A, ¶ 1) ("ICE's Quality Assurance Surveillance Plan (QSAP) is . . . designed to provide an effective surveillance method to monitor the Service Provider's performance relative to the requirements listed in the Agreement.").

at the South Texas Family Residential Center nor does plaintiff allege that CoreCivic impeded or denied her access. In fact, plaintiff explains in her complaint that she took her daughter to the medical clinic at least five times in the two weeks after Mariee first exhibited symptoms. (Docket no. 1, ¶¶ 92-101). Although plaintiff points out that her complaint "includes extensive allegations that [she] repeatedly sought medical attention for Mariee but was turned away without having been seen," (docket no. 17 at 10), this allegation is directed at ICE, not CoreCivic. (Docket no. 1, ¶ 94) (explaining there were "at least two instances where *clinic staff* [ICE] turned her away and told her to wait for an appointment on another day") (emphasis added). Accordingly, the Court finds plaintiff has failed to state a claim for negligence or gross negligence based on CoreCivic's alleged duty to ensure Mariee had access to adequate medical care.

3. Plaintiff Sufficiently Alleged CoreCivic Breached its Duty to Provide Safe, Sanitary Living Conditions and this Breach was a Proximate Cause of the Injuries at Issue

Plaintiff alleges CoreCivic was negligent and grossly negligent because Mariee died from an entirely preventable illness which she contracted while she and her mother were detained in crowded, cramped conditions with other sick children. With regard to conditions at the facility, the complaint alleges that, "[u]pon Ms. Juárez and Mariee's arrival at Dilley, officers assigned them to a small room with five other mothers, each with a child. Several children were sick." (Docket no. 1 at page 27).

CoreCivic does not dispute that it had a duty under the contract with ICE to ensure that the residents of the South Texas Family Detention Center were provided with safe, sanitary living conditions. Instead, CoreCivic alleges that plaintiff has not sufficiently stated a claim that it breached this duty or that any damages were proximately caused by such a breach. In Texas, proximate cause has two elements: proximate cause in fact and foreseeability. *Western Invs., Inc. v. Urena*, 162 S.W.3d

547, 551 (Tex. 2005). "These elements cannot be established by mere conjecture, guess, or speculation." *Id.* (quoting *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) ). "The test for cause in fact is whether the act or omission was a substantial factor in causing the injury without which the harm would not have occurred." *Western Invs.*, 162 S.W.3d at 551 (quoting *Doe*, 907 S.W.2d at 477). Foreseeability "requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *Doe*, 907 S.W.2d at 478. "The danger of injury is foreseeable if its 'general character ... might reasonably have been anticipated.'" *Id.* (quoting *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 549–50 (Tex. 1985)).

In moving to dismiss this claim under Rule 12(b)(6), CoreCivic argues that plaintiff's "general allegation that she was subjected to crowded conditions that were prime for the spread of sickness is nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." (Docket no. 14 at page 10) (quoting *Derrick v. Ontario Cmty. Hosp.*, 47 Cal. App. 3d 145, 153 (Cal App. 1975)). This Court does not agree. Six mothers and six children in a 10 X 10 space could conceivably lead to unsafe and unsanitary conditions. On the other hand, six mothers and six children in a 50 x 50 space with appropriate sanitation facilities is a whole other matter.

With regard to negligence, plaintiff's complaint alleges CoreCivic had a duty to provide Mariee with safe, sanitary living conditions; CoreCivic breached this duty when it placed her mother and her in a crowded, cramped housing unit with other sick children; this breach was a substantial factor in causing Mariee to become ill, an injury without which Mariee's death would not have occurred; and Mariee's injuries were foreseeable to CoreCivic because CoreCivic oversaw the day-to-day operations at the facility. With regard to gross negligence, plaintiff alleges CoreCivic's failure to provide safe, sanitary conditions, viewed objectively from CoreCivic's standpoint, involved an extreme degree of risk

of which CoreCivic was actually, subjectively aware, but nonetheless disregarded to proceed in conscious indifference for the safety of facility residents such that CoreCivic can be held liable for exemplary damages for gross negligence under Texas law for the injuries sustained by plaintiff and her child as a result of their detention at the South Texas Family Detention Center.  Accordingly, the Court finds plaintiff has stated a negligence and gross negligence claim upon which relief can be granted based on CoreCivic's alleged failure to provide safe, sanitary living conditions.

IT IS THEREFORE ORDERED that Defendant CoreCivic's Motion to Dismiss Complaint and, Alternatively, Motion to Strike Allegations (docket no. 14) is GRANTED in PART and DENIED in PART.  Specifically, the motion to dismiss is GRANTED such that plaintiff's negligence and gross negligence causes of action based on CoreCivic's alleged failure to ensure access to adequate medical care is DISMISSED for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6); the motion to dismiss is DENIED to the extent CoreCivic seeks dismissal of plaintiff's claims that CoreCivic was negligent and grossly negligent in failing to provide safe, sanitary living conditions; and the alternative motion is GRANTED such that the allegations which are the subject of CoreCivic's Rule 12(f) argument are stricken and shall not be considered when moving forward with this case.

It is so ORDERED.

SIGNED this 9th day of October, 2019.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE