## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | |
|---|---|
| Yazmin Juárez Coyoy, on her own behalf and as surviving parent of M.C.N.J., <br><br> Plaintiff, <br><br> v. <br><br> CoreCivic, Inc., <br><br> Defendant. | No. 5:19-cv-00916-FB |

## DEFENDANT CORECIVIC, INC.'S MOTION TO COMPEL

Pursuant to Federal Rule of Civil Procedure 37(a)(1), and Item No. 31 of the Court's "Fact Sheet," CoreCivic moves the Court for an order compelling Plaintiff to provide responses to CoreCivic's Requests for Production No. 7–8, 18, 19, 26–27, and 34 and Interrogatory No. 6.  As detailed below, these discovery requests seek relevant material that is proportional to the needs of the case.  CoreCivic requires this information to adequately explore and evaluate Plaintiff's claims. This Motion is supported by the following Memorandum of Points and Authorities and attached exhibits.

### MEMORANDUM OF POINTS AND AUTHORITIES

I.   **BACKGROUND**

A.   **Plaintiff's Allegations.**

Plaintiff and her daughter, M.J., were apprehended by U.S. Customs and Border Patrol ("CBP") agents on March 1, 2018 at the southern border.  (Dkt. 1, ¶¶ 86-87.)  After being detained at a CBP immigration processing center for four days, they were transferred to the South Texas

Family Residential Center ("STFRC") on March 5, 2018.[1]  (*Id.*, ¶¶ 87-88.)  Plaintiff alleges that upon arrival to STFRC, she and M.J. were assigned to living quarters with five other mothers— each with a child—and that one boy had a runny nose and a cough.  (*Id.*, ¶¶ 89-90.)  She claims that, within a week, M.J. developed similar symptoms, including congestion and a cough, and that she was subsequently treated for a cold, ear infection, and acute viral bronchiolitis.  (*Id.*, ¶¶ 91–92.)

On March 25, 2018, Plaintiff and M.J. traveled to New Jersey after being released from ICE custody.  (*Id.*, ¶ 102.)  Upon arriving in New Jersey, M.J. was seen and treated by a pediatrician who instructed Plaintiff to seek emergency medical attention if M.J.'s condition deteriorated further.  (*Id.*, ¶ 108.)  Plaintiff took M.J. to a local hospital, where her condition deteriorated.  (Id. at ¶¶ 8, 109.)  Six weeks later, on May 10, 2018, M.J. died.  (Id., ¶¶ 108-110.)  The cause of death was identified as "bronchiectasis, pulmonitis, and pneumothorax (collapsed lung)."  (*Id.*)  Plaintiff sues CoreCivic, alleging it is responsible for M.J.'s death.[2]

The only claim that survived CoreCivic's Motion to Dismiss is Plaintiff's sanitation claim. Plaintiff alleges CoreCivic was negligent in failing to ensure safe and sanitary conditions at STFRC, and that these conditions caused M.J.'s death.  (*Id.*, ¶¶ 116, 118–119; Dkt. 19 at 9.) Through discovery, Plaintiff provided additional detail for her claim.  Specifically, that CoreCivic "failed to provide safe and sanitary rooms and facilities, including by failing to keep sick detainees away from the healthy population, providing crowded and cramped living conditions, and ensuring

---

[1] STFRC is owned and operated by CoreCivic pursuant to a correctional services agreement with the United States Immigration and Customs Enforcement ("ICE").

[2] This is one of three cases Plaintiff is currently litigating against various defendants regarding M.J.'s detention at STFRC and subsequent death.  *See Yazmin Juárez Coyoy v. City of Eloy*, Civil Action No. 2019-cv-01391 (D. Ariz. 2019), *appeal docketed*, No. 19-17539 (9th Cir. Dec. 19, 2019); *Yazmin Juárez Coyoy v. United States of America*, Civil Action No. 20-cv-02501 (D.N.J.). A motion to transfer the case to Texas is currently pending in the District of New Jersey matter.

that sheets were regularly changed for sick detainees."  *See* Exhibit 1 (Declaration of A. Hesman) at ¶ 1, Attachment A, Rog. 14.

>    **B.     CoreCivic's Discovery Requests.**

On December 23, 2019, CoreCivic propounded its First Set of Requests for Production and First Set of Interrogatories.  (*Id*. at ¶ 1.)  After providing Plaintiff a thirty-day extension of time to respond, Plaintiff responded on February 21, 2020.  (*Id*.)  On March 11, 2020, Defense counsel sent Plaintiff's counsel detailed correspondence outlining the deficiencies with Plaintiff's responses.  (*Id*. at ¶ 3.)  Plaintiff's counsel responded on March 23, 2020.  (*Id*. at ¶ 4.)  In an attempt to reach resolution without Court intervention, on May 5, 2020, Defense counsel sent Plaintiff's counsel additional correspondence.  (*Id*. at ¶ 5.)  CoreCivic subsequently propounded Second, Third, Fourth, and Fifth Sets of Requests for Production.  (*Id*. at ¶ 6.)  Plaintiff completed her responses to these requests on April 10, 2020.  (*Id*. at ¶ 7.)  On May 15, 2020, Defense counsel sent Plaintiff's counsel correspondence detailing the deficiencies with Plaintiff's responses to CoreCivic's Second, Third, Fourth, and Fifth Sets of Request for Production.  (*Id*. at ¶ 8.)  On May 29, 2020, Plaintiff's counsel responded to Defense counsel's May 5 and 15, 2020 correspondence.  (*Id*. at ¶ 9.)  The parties met and conferred on June 3, 2020.  (*Id*. at ¶ 10.)

While they were able to informally resolve some disputes, Plaintiff refused to provide complete responses to several Requests for Production and one Interrogatory.  (*Id*.)  For the reasons detailed below, the Court should compel Plaintiff to provide responses.

## II.     THE COURT SHOULD COMPEL PLAINTIFF TO PROVIDE THE RELEVANT AND PROPORTIONAL INFORMATION SOUGHT IN CORECIVIC'S DISCOVERY REQUESTS.

"[T]he purpose of discovery is to provide the parties with information essential to the proper litigation of all relevant facts, eliminating surprise, and promoting settlement."  *Jackson v. Cty. of Bexar*, No. SA-07-CA-928-FB, 2010 WL 11601145, at *3 (W.D. Tex. Feb. 1, 2010).

"[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Samsung Elecs. Am. Inc. v. Yang Kun "Michael" Chung*, 325 F.R.D. 578, 589 (N.D. Tex. 2017) (quoting FED. R. CIV. P. 26(b)(1)). "A discovery request is relevant when . . . '[it] is reasonably calculated to lead to the discovery of admissible evidence.'" *Sanchez v. Wheaton Van Lines Inc.*, No. A-19-CV-1145-LY, 2020 WL 4208247, at *1 (W.D. Tex. July 22, 2020) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004)). "Relevancy is broadly construed, and a request for discovery should be considered relevant if there is '*any possibility*' that the information sought may be relevant to the claim or defense of any party.'" *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) (citation omitted) (emphasis added). Discovery rules are "liberally construed so as to permit the discovery of any matter which is relevant to the subject matter of the action." *Self v. Am. Home Assur. Co.,* 51 F.R.D. 222, 223 (N.D. Miss. 1970). Information need not be admissible in evidence to be discoverable. Fed.R.Civ.P. 26(b)(1).

### A.    Plaintiff is Not the Gatekeeper of Relevance.

Plaintiff has refused to provide complete responses to the following Requests for Production:

> **Request for Production No. 18**:  Produce all documents received by Plaintiff, her attorneys, or their agents, from any party or non-party to this litigation in response to an informal request, Freedom of Information Act request (or similar open governance law), or subpoena duces tecum, including all transmittal letters.
>
> **Request for Production No. 19**:  Produce all records, decisions, dockets, correspondence, or documents filed in or pertaining to any immigration proceeding involving Plaintiff or Decedent before any immigration court.

4

**Request for Production No. 27:** Produce any and all immigration and/or asylum records for both you and Decedent.[3]

Plaintiff's position is that she is entitled to review document responsive to the above requests, pick which she believes are relevant, and only produce those select documents. This is improper. By acting as the relevance gatekeeper, she keeps CoreCivic in the dark as to what documents she withheld and what their contents are.

The producing party should not be able to unilaterally decide what constitutes a relevant document. *See AdvanceMe, Inc. v. RapidPay, LLC*, No. 6:05CV424, 2007 WL 9723976, at *6 (E.D. Tex. July 2, 2007) ("First Funds should not be able to 'cherry pick' and unilaterally decide if thousands of documents relating to the operation of its accused programs are discoverable in this case. . . . First Funds is required to produce all documentation relating to the process flows, whether ACH or split process flow, so that AdvanceMe can fully investigate its claim for infringement"); *Clarke v. Epco, Inc.*, No. CIV.A. 208CV103KSMTP, 2009 WL 1259460, at *1 (S.D. Miss. May 1, 2009) ("While Defendants may be correct in their assertion that some or all of the requested documents may not be ultimately admissible, Defendants may not unilaterally decide what claims are valid and take it upon themselves to limit the scope of discovery accordingly. The court finds that the vast majority of the requested documents are relevant to Plaintiff's claims, and are reasonably calculated to lead to the discovery of admissible evidence."); *Shapiro v. Sherr*, No. CV 18-11187, 2018 WL 8809130 (E.D. Mich. Oct. 4, 2018) ("The parties are forewarned that the Court will not tolerate them unilaterally and unreasonably deciding that requested discovery is not relevant or discoverable under proportionality based solely on their own litigation position.");

---

[3] CoreCivic also requested releases for Plaintiff and M.J.'s A-Files (Request for Production Nos. 28–29), which Plaintiff refused to provide. (Ex. 1 at ¶ 1.) CoreCivic does not move to compel those releases as it was able to obtain these files directly from ICE. As detailed below, the contents of the files obtained by ICE illustrate why Plaintiff cannot be the gatekeeper of relevance.

*Lucas v. Protective Life Ins. Co.*, No. CIV.A.4:08CV00059-JH, 2010 WL 569743, at *3 (W.D. Ky. Feb. 11, 2010) (rejecting argument that underwriting materials were not discoverable based upon the insurer's "unilateral decision that these other guidelines are not relevant to the claims and defenses in this action").

The Court should reject Plaintiff's argument that she is the "judge of relevance in the first instance," as it allows her to censor her discovery responses and only produce information that is helpful or supportive of her claims.  (Ex. 1 at ¶ 4.)  For example, in response to RFP No. 27, Plaintiff produced 58 pages from her and M.J.'s immigration A-Files.[4]  (*Id.* at ¶ 1.)  The complete A-Files (which CoreCivic obtained directly from ICE) were much more voluminous.  Plaintiff's A-File is 132 pages and M.J.'s is 50.  (Ex. 1 at ¶ 11.)  The 124 pages Plaintiff withheld (under the guise of not being relevant) contained discoverable information that should have been produced to CoreCivic.  For example, Plaintiff withheld documents which describe her and M.J.'s journey the United States, including that they traveled by raft across the Rio Grande River.  (*Id.*, Attachment G at CC005195.)  Significantly, this differs from the description she provided in response to CoreCivic's Interrogatory No. 16, which asked her to describe the journey.  (*Id.* at ¶ 1.)  In response to Interrogatory No. 16, she claimed they traveled by car and "stayed at nice hotels."  (*Id.*)  Her response was devoid of any reference to a raft or the Rio Grande River.  (*Id.*)  The travel conditions M.J. was subject to during this journey are relevant to Plaintiff's claim that M.J. contracted her illness at STFRC due to allegedly unsanitary conditions.  Additionally, Plaintiff withheld A-File documents containing statements she made to border patrol agents regarding M.J.'s medical history and pre-existing conditions.  (*Id.* at ¶ 11, Attachment G at CC005285.)  Again, these statements are inconsistent with statements Plaintiff made on Facebook regarding M.J.'s health

---

[4] Her response did not indicate which documents were from Plaintiff's and which are from M.J.'s.

issues in Guatemala.  Also included in the withheld documents are statements Plaintiff made regarding her motive for illegally entering the United States.  (*Id.*)  Namely, that she wanted to reside in New York and seek employment.  (*Id.* at CC005195, CC005197, CC005274.]  She specifically denied fearing persecution or torture if she was returned to Guatemala.  (*Id.*)  Yet again, these statements are inconsistent with the information Plaintiff provided in response to Interrogatory No. 16.  (*Id.* at ¶ 1.)  In response to Interrogatory No. 16, she claimed she came to the United States to "escape violence back home."  (*Id.*)  This information is relevant to explore Plaintiff's emotional distress claims and for impeachment purposes.

As the contents of this withheld information confirm, *all* documents responsive to the above-referenced discovery requests for Plaintiff's immigration records should be produced as they provide context to her claims, including information regarding the journey to the United States and statements Plaintiff made regarding her and M.J.'s residence at STFRC.  Moreover, the information requested in the above-referenced discovery requests is proportional to Plaintiff's claims as she has easy access to the information (they are her own records or records she previously requested).  And the issues these discovery requests seek to explore are important as they directly relate to Plaintiff's emotional damages, which she requests "in excess" of $1,380,585.66 (Response to Interrogatory No. 2), the cause of M.J.'s illness/death, and to Plaintiff's credibility. (*Id.* at ¶ 1.)

The above are only examples of information CoreCivic learned Plaintiff had withheld as the result of its own investigation.[5]  CoreCivic anticipates Plaintiff has or will withhold similar documents. Plaintiff should not be permitted to conceal this information under the generic

---

[5] Recently, CoreCivic discovered Plaintiff requested donations be made, in M.J.'s honor, to a bank account maintained by her brother.  While this bank account's existence is responsive to CoreCivic's Request for Production No. 10, Plaintiff failed to identify it in response.  (Ex. 1 at ¶ 1.)

relevance blanket, especially where she failed to produce a relevance log, or provide any specific argument as to why CoreCivic is not entitled to the documents she withheld.  *See Bowcut v. Idaho State Bd. of Correction*, No. CV-06-208SBLW, 2007 WL 1674028, at *5 (D. Idaho June 5, 2007) (ordering  the parties to "provide each other with a copy of relevant documents in their possession, in a redacted form if necessary for security or privilege purposes; and, if necessary, they shall provide a security/privilege log sufficiently describing any undisclosed relevant documents which are alleged to be subject to nondisclosure").  CoreCivic is entitled to complete responses to its discovery requests which request discoverable information that is proportional to Plaintiff's claims.  While it is unknown whether this information will be *admissible*, that is a question for a later day.  At this discovery stage, the information CoreCivic requests is relevant, proportional, and necessary for it to explore Plaintiff's allegations and prepare its defenses.  Plaintiff should be compelled to produce all documents responsive to Defendant's Request for Production Nos. 18, 19, 27, rather than concealing those that are not helpful to her case.

1.     **Plaintiff's Social Media Accounts are Discoverable.**

CoreCivic's Request for Production No. 8 requested information regarding Plaintiff's social media accounts.  "Generally, [social networking site] content is neither privileged nor protected by any right of privacy."  *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 591 (N.D. Tex. 2016) (quoting *Johnson v. PPI Tech. Servs., L.P.*, No. 11-2773, 2013 WL 4508128, at *1 (E.D. La. Aug. 22, 2013)); *see also Moore v. Wayne Smith Trucking Inc.*, No. Civ. A. 14-1919, 2015 WL 6438913, at *2 (E.D. La. Oct. 22, 2015) ("It is settled that information on social media accounts, including Facebook, is discoverable.").  This is because social media usage "depicts a snapshot of the user's relationships and state of mind at the time of the content's posting."  *See Bass v. Miss Porter's School*, No. 3:08CV1807 (JBA), 2009 WL 3724968, at *1 (D. Conn. Oct.

27, 2009).   Because a person's social media posts are akin to a written diary, it is well-settled that "[r]elevant information in the private section of [an individual's] social media account is discoverable." *Howell v. Buckeye Ranch, Inc.*, No. 2:11-cv-1014, 2012 WL 5265170, at *1 (S.D. Ohio Oct. 1, 2012).

Recognizing the discoverability of her social media accounts, on January 22, 2020, Plaintiff executed a release for her Facebook account.  The release included the disclosure of her username and password, and permitted CoreCivic to retrieve both the public and private contents of her account.   Plaintiff's account contained substantial relevant material, including information regarding M.J.'s living conditions and medical conditions (both in Guatemala and after her detention at STFRC), Plaintiff's behavior after her residence at STFRC, potential witnesses, and information regarding her emotional state.  Additionally, the Facebook account contained several references to Plaintiff's Instagram account.  When CoreCivic requested Plaintiff execute a similar release for her Instagram account, however, Plaintiff refused, and instead only produced selected portions of the account that she deemed were "relevant" to her claims.   As explained above, this is improper.   Significantly, Plaintiff cannot explain why she agreed to release the Facebook contents, but refuses to do the same for her Instagram.[6]

Plaintiff's Instagram account is discoverable.  *See, e.g., McGowan v. S. Methodist Univ.*, No. 3:18-CV-141-N, 2020 WL 2199189, at *2 (N.D. Tex. May 6, 2020) (ordering plaintiffs to produce social media posts reflecting their physical activities and emotional state); *Largent v. Reed*, No. 2009-1823, 2011 WL 5632688 (Pa. Ct. Com. Pl. Nov. 8, 2011) (granting the defendant's motion to compel and requiring the plaintiff to turn over Facebook username e-mail and

---

[6] Recently, Defense counsel discovered the hashtag "#justiceformariee" has been utilized by Plaintiff and others to attract media attention on social media outlets.  While this information is responsive to several of Defendant's discovery requests (Requests for Production Nos. 4, 8), Plaintiff failed to disclose it.  (Ex. 1 at ¶ 1.)

password); *see also Ledbetter v. Wal-Mart Stores, Inc.*, No. 06-CV-01958, 2009 WL 1067018, at *1–2 (D. Colo. Apr. 21, 2009) (denying the plaintiff's request for a protective order regarding social media content); *Robinson v. Jones Lang LaSalle Americas, Inc.*, No. 3:12-CV-00127-PK, 2012 WL 3763545, at *1–2 (D. Or. Aug. 29, 2012) ("It is reasonable to expect severe emotional or mental injury to manifest itself in some [social media] content, and an examination of that content might reveal whether onset occurred, when, and the degree of distress. Further, information that evidences other stressors that could have produced the alleged emotional distress is also relevant."); *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010) (granting motion to compel broad discovery of plaintiff's social networking site content where plaintiff alleged emotional distress); *Marquez v. Bd. of Cty. Commissioners Eddy Cty.*, No. CV 11-0838 JAP/KBM, 2015 WL 13638613, at 2–3 (D.N.M. Jan. 13, 2015) (granting defendants' motion to compel plaintiff's social medial information where plaintiff alleged emotional injuries and because of the information's relevance to the subject matter of the case); *E.E.O.C. v. Original Honeybaked Ham Co. of Georgia*, No. 11-CV-02560-MSK-MEH, 2012 WL 5430974, *2 (D. Colo. 2012) (unpublished) ("storing such information on Facebook and making it accessible to others presents an even stronger case for production, at least as it concerns any privacy objection").

Because Plaintiff has an emotional distress claim, the living diary contained in her social media is relevant.  As detailed under Section II(A) *supra*, this information is also proportional to the needs of the case as it provides context to Plaintiff's emotional damages claim—which are essentially the only damages she seeks here—and is easily accessible to her.  Plaintiff should not be permitted to deprive CoreCivic of the entire story, by selecting only favorable Instagram content to produce in response to CoreCivic's request for social media.  The Court should compel Plaintiff

to produce authorizations for her social networking accounts in response to CoreCivic's Request for Production No. 8.

**B.      CoreCivic is Entitled to Explore Plaintiff's Emotional Distress Claim.**

Plaintiff alleges that, as a result of CoreCivic's alleged negligence, she suffered "extreme mental and emotional pain and distress, as well as loss of love, companionship, support, enjoyment of life, and other [damages]. . ." (Dkt. 1 at ¶ 127.)  By seeking emotional distress damages, Plaintiff has "place[d] her mental condition in controversy," *Lahr v. Fulbright & Jaworski*, L.L.P., 164 F.R.D. 204, 209 (N.D. Tex. 1996), and "open[ed] the door to evidence of other probable causes of her distress." *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CV-12-00399-TUC-CKJ, 2015 WL 11111477, at *2 (D. Ariz. June 17, 2015) (quoting *Rettiger v. IBP, Inc.*, No. 96-4015-SAC, 1999 WL 318153, at *2 (D. Kan. Jan. 6, 1999).

1.      **Plaintiff's Complete Medical History is Relevant to her Emotional Distress Claim**.

In addition to the above discovery requests—many of which seek information relevant to Plaintiff's emotional distress claim—CoreCivic propounded Request for Production No. 7, which requests Plaintiff's medical records.[7]   Because Plaintiff's medical records may reveal other potential causes for her emotional distress claim, CoreCivic is entitled to explore them.  *See, e.g.*, *Talley v. Spillar,* No. A-16-CV-670-LY-ML, 2017 WL 9288622, at *4 (W.D. Tex. Mar. 31, 2017) (finding plaintiff's "medical records are clearly relevant to his claim of emotional distress"); *Cummins v. Lollar*, No. 4:12-CV-560-Y, 2015 WL 12731746, at *2 (N.D. Tex. Jan. 5, 2015) (plaintiff's medical records from five years before alleged workplace incident were relevant and discoverable); *Aubin v. Columbia Cas. Co.*, No. CV 16-290-BAJ-EWD, 2017 WL 5495526, at *3 (M.D. La. Nov. 16, 2017) (ordering plaintiffs to produce medical records for the past 10 years

---

[7] CoreCivic subsequently agreed to limit this request to ten years.  (Ex. 1 at ¶¶ 5, 9.)

because plaintiffs "put their mental and physical conditions at issue"); *Talley v. McCon v. Perez*, No. 1:17CV77-LG-RHW, 2018 WL 8808145, at *1 (S.D. Miss. Jan. 11, 2018) (granting defendant's motion to compel mental health treatment records where plaintiff alleged "mental anguish, distress, and worry" resulting from defendant's negligence); *E.E.O.C. v. Danka Indus., Inc.,* 990 F. Supp. 1138, 1141–42 (E.D. Mo. 1997*)* ("[T]he Court finds that the medical records are discoverable to determine whether the plaintiff-intervenors' past medical history contributed to their claimed emotional distress.").

Plaintiff refused to produce any medical records, arguing the only records that "might be relevant" are those that pertain to mental health treatment.  (Ex. 1 at ¶ 9.)  But mental health records are not the only records that may reveal other potential causes for Plaintiff's emotional distress. For example, a physician's overview, workup, and historical notes may reveal other causes of emotional distress (e.g., a troubling diagnosis, drug or alcohol abuse, an emotionally taxing event in the patient's life, a particular prescription that is used to treat mental health conditions, etc.) regardless of whether the patient was seeking "mental health" treatment at the time of the encounter.  "Where a plaintiff alleges emotional distress, a defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to plaintiff's claimed emotional distress, and a defendant may propound discovery of *any* relevant medical records of plaintiff in an effort to do so."  *Moore v. Chertoff*, No. 00-953(RWR)(DAR), 2006 WL 1442447, at *2 (D.D.C. May 22, 2006) (citing cases) (emphasis added).  Plaintiff's medical records are therefore relevant to her emotional distress claim.  They are also proportional as they go to her $1,380,585.66 emotional distress claim and are easily accessible, discussed under Section II(A) *supra*.  She should be compelled to provide them.  Because Plaintiff has previously withheld relevant documents,

CoreCivic requests the Court order Plaintiff execute releases for these records, to prevent her from cherry-picking their contents.

2.   **Plaintiff's Previous Criminal & Civil Court Actions are Relevant to her Emotional Distress Claim**.

CoreCivic's Interrogatory No. 6 requested information regarding Plaintiff's civil and criminal court actions.  While Plaintiff agreed to provide responsive information for the timeframe after M.J.'s death, she has refused to provide responsive information that predates her death.

Plaintiff's previous court actions are relevant to her emotional distress claim.  *See Van Deelen v. Johnson,* No. 05-4039-SAC, 2005 WL 8160720, at *3 (D. Kan. July 15, 2005) (finding "Because plaintiff has made this claim [for damages as a result of emotional distress], the court finds that it is relevant for defendants to inquire regarding plaintiff's past lawsuits to determine what, if any, of the emotional distress damages he is claiming in the instant case might be attributable to injuries alleged in those prior lawsuits"); *Cicero v. City of New York*, No. 11 CV 0360 NGG, 2011 WL 3099898, at *3–4 (E.D.N.Y. July 25, 2011) (prior arrests may be relevant in assessing the cause and extent of emotional distress); *Sharpnack v. Kansas*, No. 04-4151-JAR, 2005 WL 8160623, at *12 (D. Kan. Aug. 18, 2005) ("The court concludes that information regarding plaintiff's prior litigation is clearly relevant to her emotional distress claims. Plaintiff's objections are overruled, and defendant's motion to compel is granted as it relates to this request."); *Duran v. City of Porterville*, No. 1:13-CV-370-BAM, 2015 WL 5598933, at 1–2 (E.D. Cal. Sept. 22, 2015) (denying motion to suppress evidence related to plaintiff's prior experience with Child Protective Services because that evidence could dispute emotional distress damages).

For example, the portion of the A-File received from Plaintiff reveals that she received a three-month restraining order against M.J.'s father, prior to her entry into the United States.  In addition, documents produced by Plaintiff revealed that on June 2, 2018, she was served with court

documents requiring her attendance at the Guatemalan prosecutor's office.  Plaintiff's criminal history is relevant for impeachment purposes.  Other court documents, such as those related to a restraining order she obtained against M.J.'s father, are relevant to her emotional damages claim and are proportional to the needs of the case for the same reasons discussed under Section II(A) *supra*.  That some of these events occurred prior to M.J.'s death is of no significance.  CoreCivic is entitled to explore Plaintiff's emotional state both before and after the death.

### C.    Information Regarding M.J.'s Living Conditions Prior to her Detention at STFRC is Relevant.

Plaintiff alleges that "unsafe and unsanitary" living conditions at STFRC caused M.J.'s death.   As such, CoreCivic propounded Request for Production No. 34, which sought all photographs and/or records of Plaintiff and M.J.'s living conditions from August 13, 2016 to the time they entered the United States.  (Ex. 1 at ¶ 1.)

Plaintiff's living conditions prior to her residence at STFRC are relevant to provide context to what she considers unsafe and unsanitary, and to compare her previous living conditions to STFRC.  They may also reveal alternative causes for Plaintiff's illness.  Plaintiff refused to provide responsive documents.  However, CoreCivic discovered photographs of Plaintiff and M.J.'s living conditions in Guatemala in the information it received from her Facebook account.  Comparing images of STFRC conditions with the living conditions images from Plaintiff's Facebook are telling, and show why the requested information is relevant.  (Ex. 1 at ¶ 12.)  This information is also proportional to the needs of the case as it goes to whether conditions at STFRC caused M.J.'s death.  Courts have permitted discovery into historical or context discovery beyond the time period that the claim actually occurred.  *See Wesman v. United Parcel Serv., Inc.*, No. CV 08-457 (DSD/SRN), 2009 WL 10678317, at *2 (D. Minn. Apr. 2, 2009) (granting motion to compel 22 months of historical or context discovery related to the decision makers responsible for plaintiff's

termination prior to the time plaintiff arrived at the company); *Greater New Orleans Fair Hous. Action Ctr., Inc. v. Dorian Apartments*, LLC, No. CV 15-6406, 2016 WL 6157534 (E.D. La. Oct. 24, 2016) (granting defendant's motion to compel plaintiff's residences for the past 15 years for the purpose of determining the racial integration of the building or immediately surrounding neighborhood where plaintiff alleged he was denied the benefit of living in a racially integrated community).  The requested information is relevant to Plaintiff's sanitation claim and the Court should compel Plaintiff to respond to CoreCivic's Request for Production No. 34.

> **D.   Information Regarding Plaintiff's Request for and Receipt of Government Assistance is Relevant.**

Plaintiff should be compelled to produce applications and requests for government assistance as requested in Request for Production No. 26.  When the parties conferred on June 3, 2020, Defense counsel clarified that it is not interested in the dollar amount of government assistance provided, but rather in the healthcare information (such as healthcare providers and dates of treatment) contained in the records.  To alleviate Plaintiff's collateral source concerns, Defense counsel proposed Plaintiff redact the monetary amounts.  Plaintiff refused and has not provided responsive documents.  For the same reasons detailed in II(B) *supra*, responsive records are relevant and proportional to the needs of the case.  Plaintiff should be compelled to produce records in response to Defendant's Request for Production No. 26.

## III.   CONCLUSION

For these reasons, CoreCivic requests that Plaintiff be compelled to produce the discovery detailed above.


/ / /

/ / /

Dated: September 24, 2020

Respectfully submitted,

STRUCK LOVE BOJANOWSKI & ACEDO, PLC

By /s/ Ashlee B. Hesman
    Daniel P. Struck, AZ Bar No. 012377
    Attorney in Charge
    Ashlee B. Hesman, AZ Bar No. 028874
    *Admitted Pro Hac Vice*
    3100 West Ray Road, Suite 300
    Chandler, Arizona 85226
    Telephone: (480) 420-1600
    Fax: (480) 420-1695
    dstruck@strucklove.com
    ahesman@strucklove.com

    Danya W. Blair, TX Bar No. 00790315
    AKERMAN LLP
    112 East Pecan Street, Suite 2750
    San Antonio, Texas 78205
    Telephone: (210) 582-0220
    Fax: (210) 582-0231
    Danya.blair@akerman.com

    *Attorneys for Defendant CoreCivic, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Christopher M. Odell
Amanda S. Thomson
ARNOLD & PORTER KAYE SCHOLER LLP
Bank of America Center
700 Louisiana Street, Suite 4000
Houston, Texas 77002
christopher.odell@arnoldporter.com
amanda.thomson@arnoldporter.com

R. Stanton Jones, Admitted pro hac vice
Robert N. Weiner, Admitted pro hac vice
Sally L. Pei, Admitted pro hac vice
Daniel F. Jacobson, Admitted pro hac vice
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
stanton.jones@arnoldporter.com
robert.weiner@arnoldporter.com
sally.pei@arnoldporter.com
daniel.jacobson@arnoldporter.com

*Attorneys for Plaintiff*

I hereby certify that on this same date, I served the attached document by U.S. Mail, postage prepaid, on the following, who is **not** a registered participant of the CM/ECF System:

N/A

/s/ Tamela S. Gation